**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elbert O. Flores, | No. CV-11-492-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Phoenix, a municipal corporation of the State of Arizona, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss (Doc. 6). For the reasons stated below, Defendant's motion is granted in part and denied in part.

**BACKGROUND**

The following facts are alleged in Plaintiff's complaint and are taken as true for purposes of this Order. Plaintiff Elbert O. Flores is a Native American and a member of the Pascua Yaqui Tribe. He was employed by the Phoenix Police Department (the "Department") for more than twenty years, and until 2010 had a "virtually unblemished work history." (Doc. 1, ¶ 9). On May 11, 2004, another member of the Phoenix Police Department, Sergeant Norton, "mockingly referenced [Plaintiff's] status as a Native American police officer with comments such as 'How is the *chief* of the night.'" (*Id.*, ¶ 11). Also on May 11, 2004, Sergeant Norton and another officer, Officer Jesse Serrano, "hurtfully and ignorantly attempted to mimic Native American song by chanting 'hey ya ya ya, hey ya ya ya' at Flores

in order to demean Flores." (*Id.*, ¶ 12). On June 16, 2004, Plaintiff lodged a formal complaint with his supervisor, Lieutenant Michael Cecchini, regarding Sergeant Norton's comments. Lieutenant Cecchini refused to take any corrective action. As a result, Plaintiff requested a formal investigation by the Department. On August 18, 2004, Commander William Campbell sent a letter to Plaintiff informing him that the Department had "concluded that the incident did not occur as alleged, and [had] closed the matter." (Doc. 1, ¶ 14). On September 27, 2004, Plaintiff "filed a charge with an Equal Opportunity Specialist." (*Id.*, ¶ 18). "Nevertheless, no remedial action was taken against either Sgt. Norton or Officer Serrano for the derogatory and hostile comments, and no action was taken against Lt. Cecchini or Cmdr. Campbell for their refusal to properly investigate Flores's complaint." (*Id.*, ¶ 19).

On March 17, 2010 – approximately six years after Norton and Serrano's alleged comments – Plaintiff was approached by his superiors who "advised him that his employment was to be terminated forthwith," and who offered him the opportunity to resign instead. In light of the impending termination, Plaintiff signed paperwork resigning his employment with the Department. Plaintiff was also subsequently given a Discipline Notice purporting to involuntarily terminate his employment because he had violated "Personnel Rules 21b3, 21b16, 21b18, Operations Orders 2.2.2(E)(1)(a), 3.13.2.D, 3.13.6.A(2), 4.6.1.B, 4.6.9.A(3)(a), 4.6.9.A(3)(b), 4.6.9.A(4), and unspecified provisions of the Employee Manual and Administrative Regulation 2.62." (Doc. 1, ¶ 26). Plaintiff appealed the Department's termination of his employment to the City of Phoenix Civil Service Board. On April 13, 2010, the Civil Service Board denied his appeal. On September 10, 2010, Plaintiff served a Notice of Claim upon Phoenix pursuant to Arizona Revised Statutes § 12-821.01. On March 14, 2011, Plaintiff filed his Complaint in the instant action. (Doc. 1).

## DISCUSSION

### I. Legal Standard

The task in a motion to dismiss "is to evaluate whether the claims alleged can be [plausibly] asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, to survive

dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

**II.    Legal Analysis**

In his Complaint, Plaintiff brings three causes of action against Defendant City of Phoenix. (Doc. 1). First, Plaintiff alleges that Defendant is liable under 42 U.S.C. § 1981 for race discrimination. (*Id.*, ¶ 48–50). Second, Plaintiff alleges that Defendant is liable under § 1981 for retaliating against Plaintiff for opposing unlawful discrimination. (*Id.*, ¶ 51–55). Third, Plaintiff alleges that Defendant is liable for intentional infliction of emotional distress. (*Id.*, 56–59).  Defendant seeks the dismissal of all three causes of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 6).[1]

---

[1] In Plaintiff's Response to Defendant's motion, Plaintiff asks the Court to take notice of a report by private investigator Clyde Schellenger. This report, however, was not submitted as part of the Complaint; nor is it a document upon which the Complaint necessarily relies or a matter of public record. Accordingly, the Court will not consider the report in ruling on Plaintiff's motion. *Lee v. City of Los Angeles* 250 F.3d 668, 688–689 (9th Cir. 2001).

**A.     42 U.S.C. § 1981 – Race Discrimination**

Plaintiff first alleges that Defendant is liable under 42 U.S.C. § 1981 for intentionally discriminating against Plaintiff on account of his race.[2] This cause of action is subject to a four-year statute of limitations. *See* 28 U.S.C. § 1658 (2006). Due to the four-year limitations period, Plaintiff cannot now seek damages for Sergeant Norton and Officer Serrano's alleged 2004 conduct. Plaintiff contends that "the Court should *infer* that the racial discrimination, which began in 2004, continued through the . . . discharge in 2010." (*Id.* at 6) (emphasis added). Plaintiff does not allege in his Complaint, however, that such racial discrimination continued, much less allege specific acts of discrimination that occurred between 2004 and his 2010 discharge. (*See* Doc. 1). The Court will not infer the existence of facts which are not alleged by Plaintiff in his Complaint.

---

[2] Section 1981 states:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (2006).

1      Plaintiff further contends in his Response to Defendant's Motion to Dismiss that

2 "there is a reasonable inference that the termination itself was motivated by racial

3 discrimination based on the Police Department's knowledge and refusal to take . . . action

4 after the [ ] racial discrimination in 2004." (Doc. 7 at 3). In his Complaint, however, Plaintiff

5 fails to allege that the termination itself was motivated by racial animus, instead alleging that

6 the termination "was a long-intended act of retaliation by the Department for Flores having

7 previously made an EEO charge." (Doc. 1 at ¶ 31). The Complaint does state that "Defendant

8 intentionally discriminated against Plaintiff on the account of his race . . . by denying him

9 the equal terms, privileges, and conditions of his employment." (Doc. 1, ¶ 49). Such broad

10 and conclusory allegations do not, however, put Defendant on notice that the termination

11 itself is alleged to have been motivated by racial animus or raise Plaintiff's right to relief

12 above the speculative level. *See Twombly*, 550 U.S. at 555 (complaint must contain more

13 than "labels and conclusions"). Plaintiff has failed, therefore, to state a claim for racial

14 discrimination.

15      **B.     42 U.S.C. § 1981 – Retaliation**

16      Plaintiff next alleges that Defendant is liable to Plaintiff under 42 U.S.C. § 1981

17 because Defendant "retaliated against Plaintiff for opposing unlawful discrimination." (Doc.

18 1, ¶ 52). "[Section] 1981 clearly establishes a right to be free from retaliatory discharge" for

19 opposing discrimination. *Irish v. City of Sacramento*, 2006 WL 224436, at *5 (E.D. Cal. Jan.

20 30, 2006); *See also Manatt v. Bank of America, NA,* 339 F.3d 792, 801–02 (9th Cir. 2003)

21 ("[Plaintiff] contends that the Bank retaliated against her for complaining to her supervisor

22 and to human resources about racial discrimination; therefore, her retaliation claim is

23 cognizable under § 1981."); *Probity Ins. Services, Inc. v. United Agricultural Benefit Trust*,

24 2011 WL 1936581, at *4 (N.D. Cal. May 20, 2011) ("Section 1981 prohibits employers from

25 discriminating against an employee because that employee has opposed any practice that the

26 employee reasonably believes is unlawful under those provisions."). To state a claim for

27 retaliation, Plaintiff must allege that (1) he "engaged in a protected activity, such as the filing

28 of a complaint alleging racial discrimination"; (2) the City subjected him to an adverse

- 5 -

employment action; and (3) "a causal link exists between the protected activity and the adverse action." *Manatt*, 339 F.3d at 800 (internal citations and quotation marks omitted). Plaintiff has adequately alleged all three of these elements. (*See* Doc. 1, ¶¶ 29–34, 52).

Defendant contends that Plaintiff has not adequately pled the third element, namely a causal link between him making accusations of discrimination and his eventual termination. (Doc. 6 at 7). Plaintiff, however, does plead a causal link, alleging that his termination "was a long-intended act of retaliation by the Department for [Plaintiff] having previously made an EEO charge." (Doc. 1, ¶ 31). Although Plaintiff's complaint does not "contain detailed factual allegations . . . it [ ] plead[s] 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens,* 534 F.3d at 1022 (quoting *Twombly*, 550 U.S. at 570). Defendant further contends that in light of the significant passage of time between the alleged discrimination and eventual termination, Plaintiff fails to sufficiently plead that the termination constituted retaliation for events that occurred six years earlier. (Doc. 6 at 9). Nevertheless, the passage of time alone does not break the causal chain in a retaliation claim where explanations for the delay exist. *See Porter v. California Dept. of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005). And it is far from clear that Plaintiff's claim has to be so detailed as to plead such explanations to survive dismissal at the pleading stage when it has otherwise stated a plausible claim. The cases cited by Defendant requiring supporting circumstantial evidence to establish causation in the lack of temporal proximity were all decided at the summary judgment stage, not on motions to dismiss. *See generally McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004); *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2004); *Manatt,* 339 F.3d 792; *Foraker v. Apollo Group, Inc.*, 427 F. Supp. 2d 936 (D. Ariz. 2006); *Wheeler v. Ariz. Dept. of Corrections*, 2008 WL 724982 (D. Ariz. March 17, 2008). Plaintiff has therefore adequately plead a causal nexus between his claims of discrimination and his termination.

### C.    Intentional Infliction of Emotional Distress

Plaintiff lastly alleges that Defendant is liable for intentional infliction of emotional

distress ("IIED"). To state a claim for IIED, Plaintiff must allege three elements:

> *[F]irst,* the conduct by the defendant must be "extreme" and "outrageous"; *second,* the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third,* severe emotional distress must indeed occur as a result of defendant's conduct.

*Mintz v. Bell Atlantic Systems Leasing Intern., Inc.* 183 Ariz. 550, 553–554, 905 P.2d 559, 562–563 (App. 1995) (citing *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987)) (emphasis and alteration in original). Plaintiff argues that the question of whether conduct is extreme and outrageous is "an issue of fact that must be resolved at trial." (Doc. 7 at 11). However, "[o]nly when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury." *Mintz,* 183 Ariz. at 554.

Plaintiff concedes that the limitations period precludes him from recovering IIED damages for Sergeant Norton and Officer Serrano's alleged 2004 comments. (Doc. 7 at 10). Plaintiff contends, however, that he has a valid IIED claim "aris[ing] out of the conduct in 2010 when [he] was terminated." (*Id.*). It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz,* 183 Ariz. at 554 (quoting *Cox v. Keystone Carbot Co.*, 861 F.2d 390 (3d Cir. 1988)). Plaintiff cites this Court's holding in *Thompson v. Wiener* for the proposition that employment-related behavior may be deemed extreme and outrageous. 2008 WL 5068945, at *6 (D. Ariz. Nov. 25, 2008). In *Thompson*, however, the plaintiffs alleged that their supervisor, a Dr. Wiener, requested that they view pornographic websites with him, sent them sexually explicit e-mails, and made inappropriate comments and sexual innuendos. *Id.* at *5. The Court held, therefore, that because the conduct alleged in *Thompson* was "at best tangential to the running of a business," it was as an exception to the general rule against IIED in the employment context. *Id.* at *6. The hiring and firing of employees is not tangential to the running of a business. Indeed, many courts have held that, as a matter or law, termination of employment, even if

- 7 -

such termination is unlawful, does not without more constitute "extreme or outrageous conduct." *See, e.g., Nelson v. National Car Rental System, Inc.*, 2006 WL 1814341, at *5 (D. Haw. June 30, 2006) ("A decision to terminate an employee, even an unlawful one, generally does not by itself constitute outrageous or extreme conduct sufficient to sustain a claim for IIED."); *Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998) ("[T]he mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous."); *Cunningham v. United Nat. Bank of Washington*, 710 F. Supp. 861, 864 (D. D.C. 1989) ("The tort [of IIED] is reserved for unusually outrageous conduct, and should not be successfully pursued by merely alleging 'unfair' circumstances surrounding a termination of employment."). In the instant case, not only is Plaintiff's IIED claim based entirely on his allegedly unlawful termination, but Plaintiff concedes that he committed "certain transgressions" which led to the termination. (Doc. 1, ¶ 30). The Court holds, therefore, that Defendant's termination of Plaintiff, even if deemed to be unlawful, does not constitute extreme and outrageous conduct. Accordingly, Plaintiff's IIED claim is dismissed.

## CONCLUSION

Plaintiff has failed to state a claim for intentional racial discrimination or intentional infliction of emotional distress. Plaintiff has stated a valid § 1981 retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 6) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that should Plaintiff desire to file a motion for leave to file an amended complaint, he shall do so **within 30 days** from the date of this Order. The proposed amended complaint shall be attached to the motion for leave to amend and comply with Federal Rules of Civil Procedure 15 and Local Rules of Civil Procedure 15.1.

DATED this 31st day of January, 2012.

*A. Murray Snow*

G. Murray Snow
United States District Judge